140 N.J. Super. 250 (1976)
356 A.2d 35
MICHAEL LEHRHAUPT, ET AL., PLAINTIFFS-APPELLANTS,
v.
WILLIAM FLYNN, MAYOR AND TOWNSHIP COUNCIL OF THE TOWNSHIP OF MADISON, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1975.
Resubmitted January 27, 1976.
Decided March 26, 1976.
*255 Before Judges LYNCH, LARNER and HORN.
Mr. Gerald C. Kelly argued the cause for plaintiffs-appellants (Messrs. Hooley, Perselay, Butler & Kelly, attorneys).
Mr. Louis J. Alfonso argued the cause for defendants-respondents.
Mr. Henry Ramer submitted a brief on behalf of Common Cause, amicus curiae (Messrs. Fuerst, Singer & Jacob, attorneys).
The opinion of the court was delivered by LARNER, J.A.D.
This appeal presents for consideration the validity of an ordinance adopted by the Township of Madison which requires certain designated officials of the municipality to file annual reports making full financial disclosure of assets, liabilities and net worth. The ordinance also requires information relating to the identification of any interest of these officials in an entity doing business with the municipality or its agencies and which may create conflicts of interest, real or potential.
Plaintiffs, members of the Madison Board of Adjustment and Planning Board, and the attorney for the Board of Adjustment *256 filed a complaint attacking the validity of the financial disclosure provisions of the ordinance. They do not question the legality of the disclosure requirements relating to conflicts of interest. The trial judge sustained the validity of the financial disclosure requirements of the ordinance except as they apply to the spouses and children of the officials. Lehrhaupt v. Flynn, 129 N.J. Super. 327 (Ch. Div. 1974).[1] It granted a stay of the enforcement of the ordinance pending the appellate process.
The major thrust of the plaintiffs at trial and on appeal is the assertion that the financial disclosure provisions are unconstitutional in that their overbreadth results in a violation of the fundamental right of privacy.
In order to focus our attention on this issue it is appropriate to set forth the pertinent portions of the ordinance:
Section 3-6.7. Full Disclosure
A. All members of the Township Council, Zoning Board, Class II and IV members of the Planning Board, and the Township Manager, Director of Law, Director of Finance, Treasurer, Tax Collector and Tax Assessor, Township Engineer, Building Inspector, Plumbing Inspector, Head of the Recreation Department, Head of the Department of Public Works, Chief of Police, Township Prosecutor, Health Administrator, Director of Welfare, Chairman of Industrial Commission, Zoning Board Attorney and Planning Board Attorney, shall file in accordance with the terms and provisions of this Ordinance, under oath, a disclosure statement of his or her net worth and the net worth of his or her spouse or minor children as of the first day of the month when said disclosure is filed in the form prescribed by the Township Attorney containing the following.
1. Cash.
a. Cash on hand in excess of $1,000.00

*257 b. A listing of all bank accounts and the amounts of cash deposited in each account. In the event of multiple accounts, if the aggregate amount exceeds two thousand dollars ($2,000), that amount shall be listed.
2. Receivables in excess of $1,000.00.
3. A listing of all real property either fully or partially owned and the value of each such holding.
4. A listing of all stocks, bonds and other securities and the fair market value of same.
5. Equity interests in proprietorships or partnerships and the like.
6. The total value of all other assets (especially excluded are the value and cash surrender value of life insurance policies, vested interests in pension plans, all furnishings and fixtures, and motor vehicles valued less than $1,000.00.)
7. A listing of all liabilities when the sum total owed to individual creditors exceeds $1,000.00.
8. Total net worth which is defined as the excess of assets over liabilities of numbers 1 to 7 above.
9. Increase or decrease of net worth as defined above since previous disclosure filed.
10. A list of his or her offices, directorships, salary employment, self-employment and any offices, directorships, salary employment and self-employment of his or her spouse in which a remuneration of $1,000.00 or more was realized in a year next preceding the filing hereof, or, in the case of a corporation or partnership any interest in excess of 10% of a corporation's outstanding shares or a partnership interest. Excluded from this list are officerships and directorships in political, religious, charitable, benevolent or educational groups if the annual compensation of such office or directorship is less than $1,000.00. Nothing herein contained shall require anyone filing such a list to specify the actual salary for said employment, etc....
Section 3-6.8. Filing of Disclosure Statements and Amended Disclosure Statements.
A. Disclosure statements filed pursuant to the terms and provisions of this Ordinance shall be filed annually with the Chairman of the Board of Ethics on or before the second Monday of January of each year except for the first filing which shall take place within 30 days of the effective date of this Ordinance. Upon filing, the Chairman of the Board of Ethics shall review each disclosure statement for possible conflicts of interests or other irregularities and may request, interview and obtain information and explanations from persons filing said disclosures in order to explain and clarify possible conflicts and irregularities. The Chairman of the Board of Ethics shall within 30 days of filing render a confidential report to the Township Mayor and Council concerning compliance with *258 this Ordinance and reporting as to possible conflicts and irregularities. Upon the reception of said report the Mayor and Council shall take whatever action they deem proper and shall advise the Chairman of the Board of Ethics as to whatever action may be taken.
B. A copy of disclosure statements filed pursuant to the terms and provisions of this Ordinance by members of the Township Council shall, after being reviewed by the Chairman of the Board of Ethics in accordance with this Ordinance be filed by the said Chairman with the Township Clerk, and upon filing with said clerk shall be deemed a public record. All other disclosure statements filed pursuant to the terms and provisions of this Ordinance shall be and remain confidential and the contents of such statements shall not be publicly divulged without the consent of the person filing same, except in judicial procedure brought by the appointing authority or by the Board of Ethics for the purpose of enforcing or enjoining violations of the Ordinance, and no such proceedings involving the divulgence of such a statement shall be instituted without prior notice to such person and where possible, opportunity afforded to him to secure the required compliance or avoid the violation as set forth in such notice.
C. Any person who willfully and knowingly and with intent to conceal or misrepresent any financial transaction or relationship required to be disclosed pursuant to this act, filing a disclosure which is false, inaccurate or incomplete in any material particular or who willfully and knowingly fails to or refuses to file any such financial disclosure statement when required to do so pursuant to the provisions of this act, is in violation of this act and the penalties contained in Chapter IV, section 4-16.1.
It is apparent from a perusal of the foregoing provisions that the local legislation seeks a comprehensive picture of the financial status of each of the listed officials. The purpose and motivation for this legislation, as expressed by counsel for the municipality, is the aim to avoid conflicts of interest and to guard against potential corruption and abuses of power by public officials.
In fact, the ordinance was allegedly introduced as an innovative measure in the wake of charges, indictments and convictions of officials of Madison Township for criminal offenses of bribery and extortion related to their public duties. The township thus points to this fact background *259 as a demonstrative local purpose and justification for the disclosure requirements.
Preliminarily, it should be observed that although there is no specific statutory authorization for municipal enactment of official financial disclosure ordinances, general power to adopt such local legislation is inherent in the broad delegation of police power contained in N.J.S.A. 40:48-2. Inganamort v. Bor. of Fort Lee, 62 N.J. 521 (1973); N.J. Builders Ass'n v. Mayor, E. Brunswick Tp., 60 N.J. 222 (1972); Kennedy v. Newark, 29 N.J. 178 (1959); Adams Newark Theatre Co. v. Newark, 22 N.J. 472 (1956), aff'd 354 U.S. 931, 77 S.Ct. 1395, 1 L.Ed.2d 1533 (1957).
Municipalities thus may enact regulatory ordinances on any subject matter, provided that (1) they do not conflict with state enactments, (2) the subject matter has not been preempted by state legislation, and (3) the subject matter does not necessarily require uniform state regulation Summer v. Teaneck, 53 N.J. 548, 554-555 (1969); Inganamort v. Fort Lee, 120 N.J. Super. 286, 306 (Law Div. 1972), aff'd 62 N.J. 521 (1973).
We perceive no valid bar to the exercise of municipal power to adopt a local ordinance dealing with financial disclosure by its officers and employees. At present there is no state legislation on the subject so that the problems of preemption and conflict are nonexistent. We do note that financial disclosure bills relating to state and local officials are presently pending before the State Legislature. However, the fact that bills are pending whose ultimate fate is unknown cannot control judicial decision at this time. See Inganamort v. Fort Lee, supra, 120 N.J. Super. at 309.
We agree with the trial judge that regulation pertaining to financial disclosure by municipal officials is not a subject matter necessarily pointing to uniform treatment on a statewide basis. It is quite appropriate for a municipality to legislate in the field, depending upon its local conditions and needs. The decision of the governing body of Madison *260 that its local milieu requires such legislation is well within its police power.
Financial disclosure by elected and appointed officials and candidates for public office has become the order of the day in our present society, either through the voluntary actions of those who aspire to high office or through compulsive legislative or administrative requirements. The underlying purpose for such disclosure is laudable as a means of maintaining integrity in the democratic process and guarding against conflicts of interest and potentially corrupt practices on the part of public officials. The State, and therefore the municipality, has a substantial interest in seeking such financial data from officeholders, not only for the purpose of disclosure of conflicts of interest but also as a means of monitoring their financial status in order to inhibit and detect corrupt practices.
The legitimate public interest must be considered, however, in balance with the competing right of privacy on the part of the affected individuals. The right of privacy has been recognized as one guaranteed by the United States Constitution. It is the fundamental freedom from intrusion by government derived by federal decisions from the "penumbra" of several constitutional provisions, including the right to receive information under the free speech guarantee of the First Amendment, freedom from unreasonable search and seizure under the Fourth Amendment, the right against self-incrimination under the Fifth Amendment, the retained rights of the people under the Ninth Amendment and the Due Process Clause of the Fourteenth Amendment. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). See also, Weiman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 218 (1952); NAACP v. Alabama, 357 U.S. 449, 462, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488, 1499 (1958); Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746, 751 (1886); Mapp v. Ohio, 367 U.S. 643, 656, 81 S.Ct. 1684, 1692, 6 *261 L.Ed.2d 1081, 1090 (1961); Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674, 677 (1934). To this panorama of federal constitutional support should be added Article I of the New Jersey Constitution which recognizes the natural and inalienable rights of the individual. Application of Tiene, 19 N.J. 149, 163-164 (1955); McGovern v. Van Riper, 137 N.J. Eq. 24, 32-33 (Ch. 1945).
As with many constitutional guarantees, the right of privacy is not absolute. It may be limited by virtue of the legitimate right of the public to acquire knowledge of all facts relevant to the performance or potential performance of its public officials. This public right to know has been articulated in terms of First Amendment guarantees in other contexts. See Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); Time, Inc. v. Hill, 385 U.S. 374, 388, 87 S.Ct. 534, 542, 17 L.Ed.2d 456, 467 (1967); Curtis Publishing Co. v. Butts, 388 U.S. 130, 163-164, 87 S.Ct. 1975, 1995, 18 L.Ed.2d 1094, 1116 (1967) (Warren, C.J. concurring in result); New York Times Co. v. Sullivan, 371 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Thornhill v. Alabama, 310 U.S. 88, 102, 60 S.Ct. 736, 744, 84 L.Ed. 1093, 1102 (1940).
Whether the test of validity applied to the disclosure provisions of the ordinance in question is that of a compelling state interest. (Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); cf. Skinner v. Oklahoma, 315 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942)) or of a reasonable relationship between the purposes and provisions of the legislation (McDonald v. Board of Election Comm'rs, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969)), there can be little question that there exists a significant interest of the public to demand financial disclosure from its officials in the quest for more responsible clean government. The public official, on the other hand, should be ready to subordinate his right of privacy to the extent that *262 it may be appropriate to effectuate the common weal. By accepting public employment an individual steps from the category of a purely private citizen to that of a public citizen. And in that transition he must of necessity subordinate his private rights to the extent that they may compete or conflict with the superior right of the public to achieve honest and efficient government.
Financial disclosure statutes and rules have been sustained in the States of Washington, Illinois and Wisconsin as valid constitutional enactments despite their invasion of the right of privacy of the affected officials. Fritz v. Gorton, 83 Wash. 2d 275, 517 P.2d 911 (Sup. Ct. 1974); Stein v. Howlett, 52 Ill.2d 570, 289 N.E.2d 409 (Sup. Ct. 1972); Illinois State Employees Ass'n. v. Walker, 57 Ill.2d 512, 315 N.E.2d 9 (Sup. Ct. 1974); In re Kading, 70 Wis. 508, 235 N.W.2d 409 (Sup. Ct. 1975). The paramount right of the public was also recognized by the Supreme Court of California although the statute under consideration was held to be unconstitutionally overbroad. City of Carmel-by-the-Sea v. Young, 85 Cal. Rptr. 1, 466 P.2d 225 (1970). A subsequent amendment of the California statute, however, was approved as a valid exercise of police power in County of Nevada v. MacMillen, 114 Cal. Rptr. 345, 522 P.2d 1345 (Sup. Ct. 1974).
Appellants do not seriously contest the basic validity of legislation requiring financial disclosure by public officials. Their major attack is addressed to the contention that the requirements of the Madison ordinance are so overbroad as to constitute an impermissible invasion of the right of privacy. They assert that even if the governmental purpose is legitimate and substantial, in order for such an ordinance to pass constitutional muster, the invasion of the fundamental right of privacy must be minimized by utilizing the narrowest means which can be designed to achieve the public purpose. See Griswold v. Connecticut, supra, 381 U.S. at 485, 85 S.Ct. at 1682, 14 L.Ed.2d at 515-516; NAACP v. Button, *263 377 U.S. 288, 307, 84 S.Ct. 1302, 1313, 12 L.Ed.2d 325, 338 (1964).
We agree that such is the controlling law in balancing the competing interests of the public and the privacy rights of the individual. We therefore must turn to the specifics of the ordinance to determine whether its disclosure requirements are beyond those which are necessary to accomplish the underlying purpose of the legislation.
The ordinance requires a limited group of officials of the township to file annual disclosure statements with the chairman of the board of ethics. Those emanating from the elected officials, namely, the members of the township council, are filed as a public record open to public scrutiny. The disclosure statements of the appointed officials (plaintiffs are in this category) are retained by the chairman of the board of ethics who is called upon to review the same for any possible conflicts of interest or other irregularities. He, in turn, is directed to render a confidential report to the mayor and council on his findings; they are authorized to take such action, if any, which they deem proper. Provision is also made for the maintenance of the confidentiality of the statement by directing that the contents "shall not be publicly divulged without the consent of the person filing same."
The amount and type of disclosure is comprehensive. The questioned portions of the statement require a listing of the following:
(a) Cash on hand in excess of $1,000.
(b) Bank accounts and cash deposited in each account.
(c) Accounts receivable in excess of $1,000.
(d) Listing of real estate and value thereof.
(e) Listing of securities and market values.
(f) Identification of equity interests in proprietorships and partnerships.
(g) Other assets, excluding life insurance values, vested interests in pension plans, furniture or fixtures and motor vehicles valued at less than $1,000.

*264 (h) List of liability which exceed $1,000.
(i) Total net worth.
(j) Changes in net worth since filing of previous statement.
(k) List of offices, directorships and employment where $1,000 or more has been received as remuneration for the prior year, without the necessity to reveal the amount of remuneration.
There is no doubt that the preparation of the disclosure statement necessarily involves a considerable burden in the expenditure of time and effort on the part of the involved public officials. Perhaps the nature of the information requested may be embarrassing to some officeholders or may have a chilling effect upon those aspiring to these offices. Nevertheless, such objections have no force when compared with the paramount right of the public to an honest and impartial government.
The data required to be disclosed is full and comprehensive. Yet the nature of the evil which motivated the legislation is such that a more limited disclosure might serve to permit the corrupt to escape detection. Since the purpose of the legislation is all-embracing as a means to ferret out conflicts of interest and detect extraordinary increases in net worth, the legislative body must be afforded sufficient leeway to accomplish its goal. The practical loopholes which may be created by lesser disclosures would destroy the efficacy of the ordinance. Overbreadth is not tested by the number of items required to be disclosed or by the depth of inquiry. The constitutional validity of such an ordinance from the viewpoint of overbreadth is rather tested by a rational relationship between the legislative purpose and the disclosure requirements and whether the full objective of the regulation can be achieved by any other more limited means.
It is apparent that the governing body made a substantial effort to limit the areas of disclosure by placing minimum dollar limits on revelation of some of the assets and *265 liabilities, by excluding the requirement of data with regard to some types of assets, and by not requiring disclosure of the amount of income from any source. In this manner the affirmative requirements are attuned to substantial assets and liabilities, net worth data and changes in net worth. As such the disclosures appear to be reasonably necessary to accomplish the dual purposes of the legislation.
In addition, the ordinance seeks to preserve a degree of confidentiality with respect to the disclosure statements submitted by the appointed officials by proscribing public access to them. In contrast, the statements of the elected officials are designated as public records consistent with the right of the electorate to know all the financial facts relating to those officials for whom they vote.
Equally comprehensive disclosure requirements were approved as reasonable constitutional intrusions on the right of privacy in Stein v. Howlett, Illinois State Employees Ass'n v. Walker, Fritz v. Gorton, and In re Kading, supra. In fact, the legislation sustained in Illinois State Employees, Fritz and Kading included financial disclosure requirements by members of the family of the public officials.
In California the court disapproved the disclosure legislation in Carmel-by-the-Sea, supra, and a few years later approved the amended statute in County of Nevada, supra. Although the act as amended was more limited in its disclosure requirements, we agree with the vigorous dissent of Judge Mosk wherein he concluded that the broader legislation fully comported with constitutional standards in view of the compelling salutary objective sought to be accomplished. His view is well articulated in the following excerpt from the dissenting opinion:
Courts have consistently upheld Corrupt Practices Acts (see annotations collected in 69 A.L.R. 377), which have required reporting of campaign expenditures by candidates for public office. Such legislation has been deemed protective against corrupt election practices and the danger that "those who have * * * aided the successful candidate may expect and demand favors in return during *266 his occupancy of the office." (Warden v. Brown (1960) 185 Cal. App.2d 626, 628, 8 Cal. Rptr. 518, 520).
The same rationale applies to this financial disclosure law. Its provisions are designed to provide the public with knowledge of the significant economic factors, if any, which may influence the exercise of a public official's decisional process. For that purpose, it is not unreasonable for the Legislature to require that individuals sacrifice their economic privacy when they assume public office. * * * [City of Carmel-by-the-Sea v. Young, 85 Cal. Rptr. at 19, 466 P.2d at 243]
Carmel-by-the-Sea is the only reported case revealed by our research which rejects financial disclosure legislation as unconstitutionally overbroad. As already noted, other courts which have considered the issue have sustained the validity of similar legislation.
Plaintiffs have not suggested any practical means of tailoring the ordinance to meet their objections. Their attack is merely founded upon a general abstract thesis that the disclosure requirements are overbroad in toto. Similarly, we cannot conceive of appropriate deletions which would narrow the scope of compulsory disclosure and at the same time preserve the integrity of purpose of the legislation.
In fact, to undertake such a task would take us beyond the scope of our judicial function. We are constrained by the traditional concepts that legislation is presumptively valid and that every intendment favors constitutionality, Buttfield v. Stranahan, 192 U.S. 470, 24 S.Ct. 349, 48 L.Ed. 525 (1904); Male v. Renda Contracting Co., 64 N.J. 199 (1974), cert. den. 419 U.S. 839, 95 S.Ct. 69, 42 L.Ed.2d 66 (1975); Harvey v. Essex Cty. Bd. of Freeholders, 30 N.J. 381, 388 (1959); 2A Sutherland, Statutory Interpretation (4 ed. 1973), § 45.11. We cannot be concerned with the wisdom of the legislation. Nor may we substitute our judgment for that of the legislative authority. Within the ambit of our function of judicial review we are unable to conclude that the presumption of validity has been clearly overcome or that the breadth of the legislative disclosure demands is beyond the bounds of constitutional limitations.
*267 In addition to the contention that the ordinance is overbroad plaintiffs assert that the classification of the enumerated officials is unreasonable and therefore in violation of the equal protection provisions of the Fourteenth Amendment. They point to the omission from the requirements of the legislation of such officials as the township clerk, deputy clerk, township auditor, municipal court judge and the violations clerk of the municipal court. We find no merit to this contention.
The mere omission of some officials from the ambit of coverage of the statute does not per se render the classification invalid. N.J. Chapt., Am. I.P. v. N.J. State Bd. of Prof. Planners, 48 N.J. 581, 601, app. dism., cert. den. 389 U.S. 8, 88 S.Ct. 70, 19 L.Ed.2d 8 (1967); Torres v. Wagner, 121 N.J. Super. 457 (App. Div. 1972). A legislature has wide discretion in selecting the areas of regulation which are most significant in carrying out the legislative purpose.
We agree with the trial judge that the classification herein has a sound rational basis. The enumerated officials subject to the act perform functions in the municipality requiring the exercise of a degree of discretion. They possess a common power which potentially exposes them to the conflicts and corruption sought to be inhibited by the legislation. Officials such as the clerk, deputy clerk and auditor perform functions which are mainly ministerial in character and therefore do not require the type of monitoring contemplated by the ordinance. The municipal judge and violations clerk are in a different category as part of the judicial system subject to regulation by the Supreme Court of this state. N.J. Const., Art. VI, § 2, ¶ 3.
We find no basis for concluding that the classification is unreasonable and therefore reject plaintiffs' argument on this point.
Finally, plaintiffs assert that the ordinance is an invalid encroachment upon their autonomy as incumbents of offices which are created by state legislation as implemented by other municipal ordinances. Those involved in this attack are the members of the board of adjustment (zoning board), *268 members of the planning board and the attorney for the board of adjustment.
Although the board of adjustment and the planning board are authorized by state legislation and constitute entities independent of the governing body of the municipality, they are not exempt from supervision and regulation by the municipality and its elected representatives. Appointments to these boards are made by the council and they are subject to general supervision and removal for cause by the governing body pursuant to the enabling legislation. N.J.S.A. 40:55-36; N.J.S.A. 40:55-1.4. As such they are clearly within the purview of officials of the municipality who may be subjected to the disclosure requirements of the ordinance in question. In the absence of conflicting or preemptive state legislation, the mere independent status of their functions does not insulate them from regulatory legislation aimed at their performance as officials of the municipality.
Similarly, the position of the board of adjustment attorney has no sacrosanct characteristic which exempts him from the rigors of the legislation. His appointment by the members of the board makes him no less an officer or employee of the municipality which has created his position and compensates him for his services.
The suggestion that the disclosure requirements and penalties for noncompliance cannot be applied validly to incumbent officials is wholly without merit. The ordinance does not vary the term of the respective officials, change their qualifications in mid-term, or revoke their appointment. It simply requires that they submit financial information. Mere appointment for a term does not create a vested right to be free of supervisory regulation which may be adopted during that term by the local legislature within its constitutional and statutory powers. Tibbs v. Boenin, 109 N.J. Super. 200 (App. Div. 1970), and Newman v. Fair Lawn, 31 N.J. 279 (1960), cited by appellants, are inapplicable.
For the foregoing reasons we sustain the validity of the ordinance and affirm the judgment below.
*269 HORN, J.A.D. (dissenting).
There can be no quarrel with the intent and purposes of the ordinance in question. Nor can there be any dispute as to the benefits which are sought by such legislation.
My dissent is posited upon other considerations which differ from the rationale of my colleagues so well expressed in the majority opinion.
My first point of difference is with respect to the majority's failure to observe that the broad delegation of police power contained in N.J.S.A. 40:48-2 is not without qualification. Municipal corporations are enjoined to deal only with matters of local concern which, if left to state action, might not be met expeditiously or not met at all. Inganamort v. Fort Lee, 62 N.J. 521, 533 (1973). As stated in N.J. Builders Ass'n v. Mayor, E. Brunswick Tp., 60 N.J. 222, 227 (1972): "It is true that delegated police power is limited to matters of local concern and forms no basis for municipal intrusion into matters `* * * involving state policy or in the realm of affairs of general public interest and applicability.' Wagner v. Newark, 24 N.J. 467, 478 (1957)." See also, Summer v. Teaneck, 53 N.J. 548, 552-553 (1969).
Obviously, the subject ordinance constitutes an effort on the part of the township to discourage corruptive practices and possibly to facilitate detection and prosecution. Such effort, in turn, is a manifestation of belief on the part of the township governing body that the present state laws which are concerned with that particular type of crime are inadequate. The frustrations of citizens with the extent of crime and the inability to curb it are well known. However, the remedy is not for the individual municipalities to effect a change, as vigilantes, by enacting their concept of remedial laws which will affect only a comparatively few individuals in their own territorial jurisdictions. It is not a matter of such local concern as was intended either under N.J.S.A. 40:48-2 or our Constitution.
Counterbalancing, if not overcoming, the desired beneficial effects of the ordinance are the inhibiting elements that are *270 thereby presented. It is not inconceivable that thoroughly honest persons might resent the intrusion into their private affairs, notwithstanding the nondisclosure provisions. Such resentment is evidenced by the institution of this action. The ordinance would probably serve to cause many competent and capable individuals to decline to serve in the future. There becomes a greater weighing of considerations on the part of potential candidates for such nonpecuniary remunerative positions. Should they surrender their constitutional right of privacy (recognized as such in the majority opinion) for the privilege of serving in such positions?
I recognize that what has just been stated may be said to bear solely on the wisdom of the governing body in enacting the ordinance. However, conceivably it may be the reason why the Legislature has not undertaken to promulgate such legislation. Statewide legislation of this character, with appropriate safeguards for the maintenance of confidentiality, would furnish a greater degree of acceptability to those affected.
The cases cited by the majority as having sustained financial disclosure status and court rules governing judges, namely, Fritz v. Gorton, 83 Wash.2d 275, 517 P.2d 911 (Sup. Ct. 1974); Stein v. Howlett, 52 Ill.2d 570, 289 N.E.2d 409 (Sup. Ct. 1972); Illinois State Employees Ass'n v. Walker, 57 Ill.2d 512, 315 N.E.2d 9 (Sup. Ct. 1974); In re Kading, 70 Wis. 508, 235 N.W.2d 409 (Sup. Ct. 1975); City of Carmel-by-the-Sea v. Young, 85 Cal. Rptr. 1, 466 P.2d 225 (Sup. Ct. 1970), and County of Nevada v. MacMillen, 114 Cal. Rptr. 345, 522 P.2d 1345 (Sup. Ct. 1974), involved statewide statutes, except in the case of In re Kading, which approved a Supreme Court rule embracing all judges having statewide jurisdiction.
My second point of departure from the majority holding is that zoning boards and planning boards are, as entities, independent of the appointing governing body. As Judge Brennan (now United States Supreme Court Associate Justice) said in Kurowski v. Bayonne Bd. of Adj., 11 N.J. *271 Super. 433, 443 (App. Div. 1951), "Zoning boards are not agencies of local governing bodies. They are statutory creations performing quasi-judicial functions."
The purpose of the Legislature in preserving the independent integrity of such boards should not be debased or lightly overlooked. Regardless of the safeguards for confidentiality, the subject ordinance still contains in the apprehensive minds of officeholders a source of threat to their privacy.
I cannot agree with the following passage in the majority opinion:
Although the board of adjustment and the planning board are authorized by state legislation and constitute entities independent of the governing body of the municipality, they are not exempt from supervision and regulation by the municipality and its elected representatives. Appointments to these boards are made by the council and they are subject to general supervision and removal for cause by the governing body pursuant to the enabling legislation. N.J.S.A. 40:55-36; N.J.S.A. 40:55-1.4. As such they are clearly within the purview of officials of the municipality who may be subjected to the disclosure requirements of the ordinance in question. In the absence of conflicting or preemptive state legislation, the mere independent status of their functions does not insulate them from regulatory legislation aimed at their performance as officials of the municipality.
Similarly, the position of the board of adjustment attorney has no sacrosanct characteristic which exempts him from the rigors of the legislation. His appointment by the members of the board makes him no less an officer or employee of the municipality which has created his position and compensates him for his services.
The fact they are subject to removal for cause by the governing body does not mean any cause  only the limited causes established at a hearing which evidences unfitness or incompetence for the continued holding of the office, such as inefficiency, neglect of duty or malfeasance in office. N.J.S.A. 40:55-1.4.
Not alone does the subject ordinance produce an inhibiting effect, but by requiring the filing of an annual financial disclosure report it also attaches another qualification to the office which is not imposed by statute. Both Newman v. Fair *272 Lawn, 31 N.J. 279 (1960), and Tibbs v. Boemi, 109 N.J. Super. 200 (App. Div. 1970), aff'd o.b. 55 N.J. 531 (1970), rejected the attempts of governing bodies to act in contravention of the statutes providing for the appointment of members to the respective planning boards.
The independence of the zoning board attorney is on the same plane as his appointing authority. He is an employee of the zoning board and subject only to the jurisdiction of the board as employer. His independence and the need for same receives support in the very nature of his duties. Opinions of the Advisory Committee on Professional Ethics, January 2, 1963 to December 31, 1969, No. 164, 92 N.J.L. 5.831 (1969). See also, N.J.S.A. 40:55-36.1, which authorizes boards of adjustment to appoint their own attorneys and fix the compensation, with the qualification that the appointees must be other than the municipal attorneys.
I would reverse.
NOTES
[1] Respondents have not cross-appealed from the court's rejection of the validity of the requirements of financial disclosure by spouses and children, and we therefore reach no conclusion on that issue. Note, however, that such a provision was sustained in Illinois State Employees Ass'n v. Walker, 57 Ill.2d 512, 315 N.E.2d 9 (Sup. Ct. 1974), and Fritz v. Gorton, 83 Wash.2d 275, 517 P.2d 911 (Sup. Ct. 1974).