187 N.J. Super. 638 (1982)
455 A.2d 602
MICHAEL TRAINO, PLAINTIFF,
v.
EDWIN F. McCOY ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division Burlington County.
Decided October 26, 1982.
*641 Carl L. Taraschi for plaintiff (Robert H. Levin on the brief).
John Harrington for defendants (Hartman, Schlesinger, Schlosser & Faxon, attorneys).
*642 HAINES, A.J.S.C.
Michael Traino, the plaintiff, served the Township of Mount Laurel, a Faulkner Act Optional Plan E municipality, under N.J.S.A. 40:69A-114.1 et seq., in three capacities: as a member of its council, elected pursuant to N.J.S.A. 40:69A-114.3; as mayor, elected by the council pursuant to N.J.S.A. 40:69A-86, 87 and, by operation of law, pursuant to N.J.S.A. 40:55-1.4, as a member of its planning board. His term of office was fixed at four years by N.J.S.A. 40A:9-130. In his private capacity he held a significant position with a corporate real estate developer in the township.
A private Mount Laurel citizen, by letter, charged him with being engaged in conflicts of interest, because he had dealt with matters involving competitors of his employer while sitting on the planning board and the township council. The matter was referred to the township's board of ethics, created by ordinance (the Code of Ethics) and composed of three persons, two being citizens of the township and the third a citizen of a neighboring municipality. No member of the governing body sat on the board. Hearings were held in response to the charge, with plaintiff's attendance being required by subpoena. He refused to obey the subpoena and did not participate in the hearings. The board, in a written opinion filed with council, found that his conduct had violated the conflict of interest provisions of the Code. The board further decided that he had not made public disclosure of "the nature and general extent of his interest in the affairs" of his employer, an additional Code requirement.
Plaintiff makes four claims:
(1) The township was not empowered to adopt an ordinance establishing a Board of Ethics and ethical standards for its elected officials.
(2) The Board did not have a quorum when it conducted its public hearing and should not have included a nonresident in its membership; consequently, its actions had no validity.
(3) The Board of Ethics had no power to issue subpoenas.
(4) The facts set forth in the complaint filed against the mayor were not sufficient to confer jurisdiction upon the Board and did not support its conclusions.

*643 A. The Municipality's Power to Adopt a Code of Ethics

Mount Laurel Township's Code of Ethics, adopted on December 28, 1978, covered
any person elected or appointed to, or employed or retained by, any public office or public body of the municipality whether paid or unpaid and whether part-time or full-time.
The ordinance provided, in pertinent part, as follows:
(3) CONFLICT OF INTEREST
a. Financial or Personal Interest
No official or employee either on his own behalf or on behalf of any other person, shall have any financial or personal interest in any business or transaction with any public body in the municipality unless he shall first make full public disclosure of the nature and extent of such interest.
b. Disclosure and Disqualification
Whenever the performance of his official duties shall require any official or employee to deliberate and vote on any matter involving his financial or personal interest, he shall publicly disclose the nature and general extent of such interest and disqualify himself from participating in the deliberation as well as in the voting.
(4) BOARD OF ETHICS
a. Organization
There is hereby created and established a Board of Ethics consisting of three persons who shall hold no other office or employment under the municipality. At least one of said members shall be an attorney-at-law of the State of New Jersey, and said member may, but shall not be required to be, a resident of the municipality. All other members shall be residents.
c. Hearings and Determinations
Upon sworn complaint of any person alleging facts which, if true, would constitute improper conduct under the provisions of this Code, the Board shall conduct a public hearing in accordance with all of the requirements of due process of law, and in written findings of fact and conclusions based thereon, make a determination concerning the propriety of the conduct of the official or employee complained of.
(5) ENFORCEMENT
a. Sanctions
In the event that the Board of Ethics shall, under the provision of No. 4 above, make a determination that the conduct of any official or employee was improper, the governing body, based upon the written findings, conclusions and determination of the Board of Ethics, may institute appropriate action for censure, suspension or removal from office of said official or employee.
This effort to provide an ethics code for municipal officials is highly commendable. Is it authorized? It is a fundamental principle that

*644 ... [t]here is no inherent right of local self-government beyond the control of the state, and that municipalities are but creations of the state, limited in their powers and capable of exercising only those powers of government granted to them by the Legislature. [Wagner v. Newark, 24 N.J. 467, 474 (1957)]
No statute provides any express authority to any New Jersey municipality for the adoption of a code of ethics. This contrasts with N.J.S.A. 52:13D-23, which requires the promulgation of codes of ethics for employees of the State and sets forth general standards of conduct. This statute, unlike Mount Laurel's ordinance, does not affect elected officials. Defendants nevertheless argue that municipal power to enact a code of ethics is contained in broad legislative provisions.
They point to N.J.S.A. 40:48-1, which provides:
The governing body of every municipality may make, amend, repeal and enforce ordinances to:
........
(3) Prescribe and define, except as otherwise provided by law, the duties and terms of office or employment of all officers and employees; ...
This statute, while authorizing a municipal governing body to prescribe the duties of its officers and employees, says nothing specific about the regulation of ethical conduct. Moreover, it has been interpreted as not giving a municipal governing body any authority to affect the duties and terms of office of elected officials. In Lynch v. West New York, 115 N.J. Super. 1 (App. Div. 1971), the court struck down an ordinance which altered the eligibility and the terms of service of the Commissioners of West New York. It held:
The above statutory provision [N.J.S.A. 40:48-1] does not apply to or warrant the making of an ordinance prescribing and defining the duties and terms of office or commissioners elected by the people. Their duties and terms of office are prescribed and defined by acts of the Legislature. The commissioners are not "officers or employees" to be paid compensation for the services rendered in their employment. The commissioners constitute a "governing body of the municipality." [at 16]
For the same reasons, N.J.S.A. 40:48-1 does not authorize the adoption of an ethics code which regulates elected officials.
The above statute, however, does not comprise the entire grant of police power to municipalities. N.J.S.A. 40:48-2 has *645 been described as an additional reservoir of that power. Inganamort v. Fort Lee, 62 N.J. 521, 536 (1973). This statute reads as follows:
Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this State or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law.
Our courts have construed this express grant of power as "subject only to the limitation that such action not be prohibited by or inconsistent with the Constitution or other statutes." Fred v. Old Tappan, 10 N.J. 515, 520-521 (1952). In Lehrhaupt v. Flynn, 140 N.J. Super. 250 (App.Div. 1976), for example, the Appellate Division sustained a municipal ordinance enacted pursuant to N.J.S.A. 40:48-2 which required financial disclosures by appointed personnel. In so holding the court stated:
Appointments to these boards [board of adjustment and planning board] are made by the council and they are subject to general supervision and removal for cause by the governing body pursuant to the enabling legislation. N.J.S.A. 40:55-36; N.J.S.A. 40:55-1.4. As such they are clearly within the purview of officials of the municipality who may be subjected to the disclosure requirements of the ordinance in question. In the absence of conflicting or preemptive state legislation, the mere independent status of their functions does not insulate them from regulatory legislation aimed at their performance as officials of the municipality. [at 268]
Furthermore, Mount Laurel Township is governed by the Optional Municipal Charter Law (Faulkner Act), N.J.S.A. 40:69A-1 et seq. With respect to such municipalities it has been ordained by the Legislature that
Each municipality is governed by an optional form of government pursuant to this Act, shall, subject to the provisions of this Act or other general laws, have full power to: (a) organize and regulate its internal affairs and to establish, alter and abolish offices, positions and employments and to define their functions, powers and duties thereof and fix their term, tenure and compensation.... [N.J.S.A. 40:69A-29]
The extent of the powers given to Faulkner Act Municipalities is further emphasized by N.J.S.A. 40:69A-30, which provides:
The general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution *646 of this State. Any specific enumeration of municipal powers contained in this act or in any other general law shall not be construed in any way to limit the general description of power contained in this article, and any such specifically enumerated municipal powers shall be construed as in addition and supplementary to the powers conferred in general terms by this article. All grants of municipal power to municipalities governed by an optional plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed, as required by the Constitution of this State, in favor of the municipality.
These municipalities also command all municipal powers delegated generally by other enactments. N.J.S.A. 40:69A-26 and 28. Our courts interpret these statutes as providing very broad powers of self-government; specifically enumerated powers are to be read as supplementing, not as restricting, general powers. State v. Boston Juvenile Shoes, 60 N.J. 249, 254 (1972). These principles and general provisions are implemented by N.J.S.A. 40:69A-91, which provides in part:
Nothing here contained shall prevent the municipal council from appointing committees or commissions of its own members of citizens to conduct investigations into the conduct of any officer or department, or any matter relating to the welfare of the municipality, and delegating to such committees or commissions, such powers of inquiry as the municipal council may deem necessary....
Read together, these statutes clearly provide municipalities with implied power to enact codes of ethics affecting nonelected officials. Do they authorize such codes, if they regulate the conduct of elected officials?
A regulatory municipal ordinance is objectionable if (1) it conflicts with state enactments, or (2) the subject matter has been preempted by state legislation, or (3) the subject matter requires uniform state regulation. Summer v. Teaneck, 53 N.J. 548, 554-555 (1969); Lehrhaupt v. Flynn, supra 140 N.J. Super. at 259. It is apparent that a code of ethics which authorizes the disciplining of elected officials contravenes all of these rules.
New Jersey has numerous laws dealing with the composition of governing bodies and the election and term of office of municipal officials in Faulkner Act municipalities, e.g., N.J.S.A. 40:69A-33, 34, 34.1, 34.2, 34.3, 82 through 86, and 117 through 117.3. The right of the Legislature to prescribe qualifications *647 for elective offices, absent constitutional prohibition, is clear and long recognized. Stothers v. Martini, 6 N.J. 560 (1951). Mount Laurel's ordinance, since it could shorten terms of office, suspend officials and restrict performance, conflicts with these election laws. In addition, New Jersey has specific laws dealing with the removal of elected officials. See, for example, N.J.S.A. 2A:81-17.2al, 2A:81-17.2a3, 2A:81-17.2a4, 40:69A-91, 40:69A-166, 40:69A-167, 40:69A-168. These statutes authorize removal for (1) failing or refusing to appear before any court grand jury, the State Commission of Investigation, a legislative committee or the Governor; (2) commission of a misdemeanor; (3) seeking individually to influence the official acts of the municipal manager or any other officer; (4) interfering with the performance by such officers of their duties; (5) bypassing the municipal manager in dealing with the administrative service; (6) having a direct or indirect interest in any contract with the municipality; (7) accepting franks, free passes, tickets or service; (8) promising appointment or employment in the municipality in return for political support; (9) and by recall petition. Thus, the Legislature has preempted matters relating to the removal of elected officials, denying any authority to municipalities for that purpose. This is rational: elected municipal officials should be subject to removal laws which are uniform throughout the State; discriminatory practices by municipalities would be unfortunate and unacceptable. Finally, N.J.S.A. 40:69A-29 makes municipalities subject to the cited election and removal laws; it provides that they are "subject to... other general laws" when they operate under the Faulkner Act. Mount Laurel's ordinance ignores this directive.
The general rule concerning removal power is set forth in 4 McQuillin, Municipal Corporations (3 ed. 1979 rev.), § 12.231 at 241:
Where the charter or legislative act applicable is silent on the subject, it is sometimes held that the municipal corporation has no power to remove an elective officer, because in such case the proper method of removal for cause is by judicial proceedings. The rule usually applied is that, unless the law provides to the contrary, an officer elected by popular vote for a definite period can be *648 removed from office only by impeachment, or by judgment of forfeiture of a competent judicial tribunal.
For these reasons I conclude that Mount Laurel's ordinance is invalid and unenforceable as applied to elected officials. Nevertheless, it is appropriate for me to address the other issue raised in this proceeding. An appellate court, if it disagrees with my conclusions regarding the validity of the ordinance, should not be obliged to remand the matter in order to make a full determination of the underlying issues.

B. The Quorum and Residence Questions

Rules adopted by the Board of Ethics provided that three of its members would constitute a quorum for the conduct of its business. The hearing involving plaintiff was conducted by only two members of the Board because one was disqualified. Its ultimate determination was made by those two members. It is therefore argued by plaintiff that no quorum was present. I disagree.
By common law, a majority of a board, such as the Board of Ethics, constitutes a quorum. This rule can be changed only by general law or charter, not by internal rule, even when the body in question is given general rule making powers. Barnert v. Paterson, 48 N.J.L. 395, 400 (Sup.Ct. 1886); Florham Park v. Health Dep't, 7 N.J. Misc. 549, 550-551 (Sup.Ct. 1929); 4 McQuillin, op. cit., § 13.27, 13.30. Consequently, two members of the Board of Ethics could act; they constituted a quorum.
Plaintiff also argues that the Board was improperly constituted because one member was a nonresident. N.J.S.A. 40:69A-91 permits a municipal governing body to appoint "its own members or... citizens" to conduct investigations. The term "citizens" is not defined. Mount Laurel has adopted its own definition, declaring by ordinance that certain nonresidents are eligible appointees. There is no reason to disagree with that conclusion, which provides obvious advantages since it widens *649 opportunities for choice and encourages the participation of independent, noninvolved investigators in municipal affairs. N.J.S.A. 40A:9-1.3 authorizes municipalities to adopt ordinances and resolutions making residence a condition of employment, thereby acknowledging their right to do otherwise. Further, in N.J.S.A. 40A:9-1.4 through 1.9, the Legislature has emphasized the right, but not the obligation, of municipalities to adopt residence requirements and, in certain circumstances, has expressly authorized the employment of non-residents. I conclude, therefore, that Mount Laurel's appointment of a non-resident to its Board of Ethics was lawful.

C. The Power to Issue Subpoenas

The only express statutory authority for the issuance of subpoenas in connection with municipal investigations is found in N.J.S.A. 40:48-25. It provides in part: "When the governing body of a municipality shall have appointed a committee of its members upon any subject or matter within its jurisdiction, the committee may issue a subpoena...." (Emphasis supplied). It is apparent that this statute limits the power to issue subpoenas to committees composed of the members of a governing body; it does not confer such power upon any other committee, such as a board of ethics. Evanko v. Duff, 63 N.J. Super. 548, 554 (Law Div. 1960).
The Board suggests that its power to subpoena witnesses is conferred by N.J.S.A. 2A:67A-3, which provides in part:
"Any such officer, board, commission, committee, or body authorized by law to exercise the power of subpoena may be its subpoena...." [Emphasis supplied]
This statute does not confer subpoena power upon any municipal body; it relies upon other legislation to provide that power. N.J.S.A. 40:69A-91 is not helpful. After authorizing the appointment of a committee to conduct investigations, it provides that the municipal council may delegate "to such committees or commissions such powers of inquiry as the municipal council may deem necessary." This would permit the delegation of any *650 power possessed by the governing body. The only subpoena power possessed by the council was that granted by N.J.S.A. 40:48-25; as noted above, it limits that power to a committee composed of members of a governing body. General rules relating to the subdelegation of municipal powers are therefore not helpful. As stated in Jansco v. Waldron, 70 N.J. 320 (1976):
Whether or not local government itself is required to exercise total power granted to it, or whether a proper and valid exercise of such power may be had by subdelegating particular details to a subordinate person or body, depends on the legislative expression viewed in light of the power granted. [at 326]
The "total power" granted to the governing body by statute is to appoint a committee of its members with power to issue subpoenas; there is no residue of subpoena power which could be sub-delegated to a committee under N.J.S.A. 40:69A-91.
These conclusions are confirmed by the holdings in Newark v. Benjamin, 144 N.J. Super. 58 (Law Div. 1976), aff'd 144 N.J. Super. 389 (App.Div. 1976), aff'd 75 N.J. 311 (1977), and Evanko v. Duff, supra, 63 N.J. Super. at 554, both of which concluded that only the municipal governing body, or a committee thereof, could issue subpoenas. In the Newark opinion the trial court said:
The final matter to be considered is whether the provisions of the ordinance authorizing issue of subpoena are valid. Clearly, they are not. Subpoenas may not be issued, except upon constitutional and legislative authority. See United States v. Minker, 350 U.S. 179, 76 S.Ct. 218, 100 L.Ed. 185 (1956); 97 C.J.S. Witnesses § 21 at 372. No case holding that authority to issue subpoenas may be created by ordinance has been cited, and research has not disclosed any. Every instance in which subpoenas may be issued in this State is one in which the basic authority comes from a statute. [144 N.J. at 72]

D. The Facts

The inquiry conducted by the Board responded to a letter written to the Board by a citizen of the township. It pointed to Traino's involvement in land development in the township and his attempted resignation from the planning board. It then said:
It strikes me that for an individual who has not completed his first term as an elected official, Mr. Trainor has certainly taken advantage of this trusted office by feathering his own nest at possibly the public's expense.

*651 Are we, the citizens of Mt. Laurel, about to experience another grab by the developers who hire elected township officials to do their bidding and smooth the path for special interest groups?
It becomes obvious that Mr. Traino has recognized his conflict of interest by attempting to resign from the Planning Board; but does he still intend to continue as Mayor and Councilman when, in fact, the law requires that the Mayor be a member of the Planning Board?
Does Mr. Traino recognize that he, as Mayor or Councilman, may also have to pass judgment on any possible appeals from the Planning Board; or is it his intention to once more short-change the public's interest by abstaining on these matters?
I question Mr. Traino's conflict of interest at the public's expense and ask this Ethics Board to investigate this matter since I feel the best interest of the township is not being served.
I feel thoroughly frustrated and disgusted with elevated officials who use the public trust to serve their own interests.
The code of ethics provides:
Upon sworn complaint of any person alleging facts which, if true, would constitute improper conduct under the provisions of this Code, the Board shall conduct a public hearing ...
A careful reading of this letter-complaint does not reveal any facts, which, if true, would constitute improper conduct. The complaint is conclusory and pejorative. Thus, it should not have provoked the Board's action; it did not confer jurisdiction.
This conclusion is further supported by the insufficiency of the Board's factfinding. It found that plaintiff voted upon issues affecting the "competitors" of his employer. The term "competitors" was not defined. Traino's employer was a developer in the township. Every other developer operating there could be classified as a "competitor." A person building a single dwelling or other structure in the township could be a "competitor." Every building necessarily competes for limited resources. It is very doubtful that plaintiff's participation in a planning board hearing which involved the construction of a single dwelling would constitute a conflict of interest, notwithstanding the fact that the applicant was, in the sense suggested, a "competitor" of his employer. Thus, the lack of any definition of this term is fatal. In addition, the Board failed to point to any specific incidents constituting a conflict of interest or raising a disclosure obligation. No facts and no criteria substantiate the *652 Board's decision that Trainor's actions involving his "competitors" affected his actual pecuniary interest, even indirectly. The Board failed to identify those individuals or entities whose applications were so adverse to Trainor's employer as to be fairly classified as "competitors". It provided no basis for the conclusion that he acted for his own benefit or had been tempted to so act.
In addition, Traino may very well have met the disclosure requirements of the ordinance. It does not require written disclosure. The written disclosure which was made invites interested parties to call the plaintiff for further details. The Board made no findings of fact as to any private or public, oral or written disclosure by Trainor of his alleged conflict of interest. Hence, its conclusion that his disclosure was inadequate had no proper basis.